**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.

STANLEY JANUSKA, individually
and on behalf of all others similarly situated,   **CLASS ACTION**

    Plaintiff,

vs.

DUYWASHMAN LLC, a Florida Limited Liability   **JURY TRIAL DEMANDED**
Company, GULU WASH, LLC, a Florida Limited
Liability Company, d/b/a 4Ever Young,

    Defendants.
_____/

**CLASS ACTION COMPLAINT**

Plaintiff, Stanley Januska (hereinafter "Plaintiff"), brings this class action under Rule 23 of the Federal Rules of Civil Procedure against Duywashman LLC, ("Duywashman"), Gulu Wash, LLC d/b/a 4Ever Young ("4Ever Young") (collectively named "Defendants"), for their violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter "the TCPA"), and the regulations promulgated thereunder.  In support, Plaintiff alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendants in negligently or willfully contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), thereby invading Plaintiff's privacy.  Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

1

2. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [FCC]."[1] The TCPA is designed to protect consumer privacy by, among other things, prohibiting the making of autodialed or prerecorded-voice calls to cell phone numbers and failing to institute appropriate do-not-call procedures. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. 64.1200(d).

3. The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

4. Additionally, the FCC has explicitly stated that the TCPA's prohibition on automatic telephone dialing systems "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." U.S.C.A. Const. Amend. 5; Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C.A. § 227(b)(1)(A)(iii). *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010)

5. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of

---

[1] *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, ¶ 1 (2015).

2

> protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

6. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." Breslow v. Wells Fargo Bank, N.A., 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

## JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

8. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District, including the transmission of the subject unauthorized text advertisements.

9. The Court has personal jurisdiction over Defendants because they conduct business in this state, market their services within this state, and have availed themselves to the jurisdiction of the State of Florida by transmitting the subject unauthorized text advertisements to Plaintiff and Class Members in this state.

## PARTIES

10. Plaintiff's domicile is in Broward County, Florida. Plaintiff is a citizen of the state of Florida.

11. Class Members are citizens of the state of Florida and throughout the United States.

12. Defendant, Duywashman LLC, is a Florida Limited Liability Company and is a Florida citizen.

13. Defendant, Gulu Wash, LLC d/b/a 4Ever Young, is a Florida Limited Liability Company and is a Florida citizen.

14. Defendants jointly operate 4Ever Young, a "preventative health facility". (Defendants' website, https://www.fyinstitute.com/ viewed on June 21, 2019).

15. Defendants promote and market their services, in part, by sending unsolicited text messages to wireless phone users.

16. Defendants, directly or through other persons, entities or agents acting on their behalf, conspired to, agreed to, contributed to, authorized, assisted with, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited text messages that are the subject matter of this Complaint.

## FACTUAL ALLEGATIONS

17. At all times relevant, Plaintiff was a citizen of the State of Florida. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

18. Duywashman and 4Ever Young are, and at all times mentioned herein were, corporations and "persons," as defined by 47 U.S.C. § 153 (39).

19. At all times relevant Defendants conducted business in the State of Florida and in Broward County, within this judicial district.

20. Defendants utilize bulk SPAM text messaging, or SMS marketing, to send unsolicited text messages, marketing and advertising 4Ever Young's services, including at least three unsolicited text messages to Plaintiff.

21. Telemarketing is the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

22. Defendants sent text messages to Plaintiff and to Class Members for the purpose of promoting anti-aging services, such as "cosmetic services and skin care" and "whole body wellness services" and products, including "supplements" that are sold by 4Ever Young.

23. The text messages which Defendants sent to Plaintiff were unsolicited advertisements because the texts promoted good and services offered for sale by 4Ever Young, which it transmitted to Plaintiff without his prior express written consent. The text messages sent by Defendants to Plaintiff constituted advertisements because the texts drew attention to services offered for sale by 4Ever Young to promote the sale of those services.

24. Defendants engaged in Telemarketing by sending text messages to Plaintiff which promoted the purchase of Defendants' merchandise.

25. Defendants engaged in Telemarketing when it sent the subject text messages to Plaintiff and Class Members because one purpose that Defendants had in sending these texts was to promote the sale of goods, or services.

26. Defendants failed to obtain prior express written consent from Plaintiff before they sent the subject text messages to him.

27. Upon information and belief, Plaintiff alleges that Defendants failed to obtain prior express written consent from Class Members before they sent text messages to Class Members.

28. For example, on or about April 10, 2019, at approximately 11:38 a.m. (EST) and on or about May 10, 2019, at approximately 9:32 a.m. (EST), Defendants sent the following unsolicited text messages to Plaintiff's cellular telephone ending in "5104."



29. On or about May 13, 2019, at approximately 2:07 p.m. (EST), Defendants sent the following unsolicited text message to Plaintiff's cellular telephone ending in "5104."

30. Plaintiff has never signed-up for, and has never used, Defendants' services, and has never had any form of business relationship with Defendants.

31. Through the unsolicited SPAM text message, Defendants contacted Plaintiff on Plaintiff's cellular telephone regarding an unsolicited service via an "automatic telephone dialing

6

system," ("ATDS") as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).

32. Upon information and belief, this ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

33. Upon information and belief, this ATDS has the capacity to store numbers on a list and to dial numbers from a list without human intervention.

34. The impersonal and generic nature of the text messages that Defendants sent to Plaintiff demonstrate that Defendants used an ATDS to send the subject text messages.

35. Upon information and belief, Defendants used a combination of hardware and software systems which have the capacity to generate or store random or sequential numbers or to dial sequentially or randomly in an automated fashion without human intervention.

36. Upon information and belief, Defendants used a device to send the subject text messages to Plaintiff and Class Members that stores numbers and dials them automatically to a store list of phone numbers as part of scheduled campaigns.

37. This text message constituted a call that was not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

38. Plaintiff did not provide Defendants or its agents prior express consent to receive text messages, including unsolicited text messages, to his cellular telephone, pursuant to 47 U.S.C.

39. The unsolicited text message by Defendants, or their agents, violated 47 U.S.C. § 227(b)(1).

40. Defendants are and were aware that it is placing unsolicited text messages to Plaintiff and other consumers without their prior express consent.

41. Plaintiff was damaged by Defendants' text messages. In addition to using Plaintiff's cellular data, his privacy was wrongfully invaded, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted robo-text messages forcing her to divert attention away from his work and other activities. *See Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, 1211 (11th Cir. 2018). ("[T]ime wasting is an injury in fact".... "[A] small injury… is enough for standing purposes").

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this class action under rules 23(a) and 23(b)(2) & (b)(3) of the Federal Rules of Civil Procedure on behalf of itself and of a similarly situated "Class" or "Class Members" defined as:

> All persons in the United States who, within the four years prior to the filing of this Complaint, were sent one or more text messages, from Defendants or anyone on Defendants' behalf, to said person's cellular telephone number, promoting the sale of Defendants' merchandise or services, without the recipients' prior express written consent.

43. Excluded from the Class are: any Defendants, and any subsidiary or affiliate of that Defendants, and the directors, officers and employees of that Defendants or its subsidiaries or affiliates, and members of the federal judiciary.

44. This action has been brought and may properly be maintained as a class action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

45. **Numerosity:** At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendants' conduct

consisted of a standardized SPAM text messaging campaign electronically sent to particular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

46. Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendants' records, including, but not limited to Defendants' text and marketing records.

47. Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

48. **Existence and Predominance of Common Questions of Fact and Law:** There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

   a. Whether, within the four years prior to the filing of this Complaint, Defendants or their agents sent any unsolicited text message/s (other than a message made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic dialing and/or SMS texting system to any telephone number assigned to a cellular phone service;

    b. How Defendants obtained the numbers of Plaintiff and Class members;

    c. Whether the dialing system used to send the subject text message is an Automatic Telephone Dialing System;

    d. Whether Defendants engaged in telemarketing when they sent the text message which are the subject of this lawsuit;

    e. Whether the text messages sent to Plaintiff and Class Members violate the TCPA and its regulations;

    f. Whether Defendants willfully or knowingly violated the TCPA or the rules prescribed under it;

    g. Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendants' acts and conduct;

    h. Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendants from continuing to engage in their unlawful conduct; and

    i. Whether Plaintiff and the Class are entitled to any other relief.

49. One or more questions or issues of law and/or fact regarding Defendants' liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

50. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

51. Plaintiff and members of the Class each received at least one SPAM text advertisement, advertising the services and purchase of products sold by 4Ever Young, which Defendants sent or caused to be sent to Plaintiff and the members of the Class.

52. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel, who are competent and experienced in litigation in the federal courts, TCPA litigation and class action litigation.

53. **Superiority:** A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendants by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

54. **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted

under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole.  Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendants' ongoing violations of the TCPA, and to order Defendants to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted text messages.

**COUNT I**
**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227(b)**

55. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 54 of this Complaint as though fully stated herein.

56. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system. . .to any telephone number assigned to a . . .cellular telephone service . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

57. "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention." *See, e.g., Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at *4 (S..D. Fla. June 9, 2009) (citing FCC, In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07-232, Par. 12, n.23 (2007)).

58. Defendants – or third parties directed by Defendants – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls, for telemarketing purposes, to the cellular telephones of Plaintiff and the other members of the Class defined above.

59. These calls were made without regard to whether or not Defendants had first obtained express permission from the called party to make such calls. In fact, Defendants did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

60. Defendants have, therefore, violated Sec. 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to send non-emergency text messages to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

61. The foregoing acts and omissions of Defendants constitutes numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

62. As a result of Defendants' negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

63. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendants, as set forth in the Prayer for Relief below.

### COUNT II
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227(b)

64. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 54 and 56--58 of this Complaint as though fully stated herein.

65. At all relevant times, Defendants knew or should have known that its conduct as alleged herein violated the TCPA.

66.   Defendants knew that it did not have prior express consent to send these texts, and knew or should have known that its conduct was a violation of the TCPA.

67.   Because Defendants knew or should have known that Plaintiff and Class Members did not give prior express consent to receive autodialed texts, the Court should treble the amount of statutory damages available to Plaintiff and members of the putative Class pursuant to § 227(b)(3) of the TCPA.

68.   As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and The Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

69.   Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendants, as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendants for:

a.  An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

b.  Statutory damages of $500 per text;

c.  Willful damages at $1,500 per text;

d.  A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii);

e.  An injunction prohibiting Defendants' from using an automatic telephone dialing system to text numbers assigned to cellular telephones without the prior express

      written consent of the called party;

f.   Reasonable attorney's fees and costs; and

g.   Such further and other relief as this Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated: June 21, 2019                         Respectfully submitted,

*/s/ Seth Lehrman*
Seth M. Lehrman (FBN 132896)
E-mail: seth@epllc.com
EDWARDS POTTINGER LLC
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820
Facsimile: 954-524-2822

*Attorneys for Plaintiff*